Asad E. MUJIHADEEN

v.

Charles BASS.

No. 3-92-0405.

United States District Court, M.D. Tennessee, Nashville Division.

June 8, 1993.

Asad El–Amin Mujihadeen, pro se.

David T. Whitefield, Kimberly Jennings Dean, Office of the Atty. Gen., Civil Rights and Claims Div., Nashville, TN, for defendant.

## ORDER

HIGGINS, District Judge.

The Court has before it the Report and Recommendation (entered April 28, 1993; Docket Entry No. 53) to which no objections[1] have been filed within the required time.

After independently reviewing the Report and Recommendation and the entire record, the Court finds the Magistrate Judge's findings and conclusions are correct and they are adopted and approved.

Accordingly, the order (entered February 23, 1993; Docket Entry No. 30) granting plaintiff's motion to join Joel Foster and Robert Conley as defendants is vacated, and the motion to join said parties as defendants is denied.

Further, the motion of the defendant, Charles Bass, for summary judgment is granted, and this action is dismissed with prejudice.

The entry of this order shall constitute the judgment in this action.

It is so ORDERED.

## REPORT AND RECOMMENDATION

Filed April 28, 1993

SANDIDGE, United States Magistrate Judge.

By an Order entered March 31, 1993, the Court remanded this matter to the Magistrate Judge for reconsideration of the Magistrate Judge's Order entered February 23, 1993 (Docket Entry No. 30), which joined Robert Conley and Joel Foster as defendants to this action. The Magistrate Judge was directed to reconsider this Order in light of defendant Bass' motion for review (filed March 3, 1993; Docket Entry Nos. 35–36), and plaintiff's response (filed March 22, 1993; Docket Entry No. 43).

Upon reconsideration of the Order joining Conley and Foster, I determine that the Order should be vacated and that Foster and Conley should be dropped as defendants to this action.

Further, pursuant to Federal Rule of Civil Procedure 72(b) and the Local Rules of Court, and in order to expedite final resolution of this action, I recommend that defendant Bass, pending motion to dismiss and/or for summary judgment (Docket Entry Nos. 31–33) should be granted and that this matter should be dismissed.

## I. BACKGROUND

By an Order entered May 6, 1992, this matter was referred to the Magistrate Judge for consideration of its malicious or frivolous nature, 28 U.S.C. § 1915(d); *Malone v. Colyer*, 710 F.2d 258, 260–61 (6th Cir.1983), and

---

1. No objections have been filed by the plaintiff, despite an extension of time within which to do so. *See* order entered May 14, 1993 (Docket Entry No. 55).

further proceedings, if necessary, under Fed. R.Civ.P. 72(b), and Local Rules of Court.

Plaintiff Asad Mujihadeen, currently an inmate of the Tennessee Department of Corrections ("TDOC"), filed this complaint *pro se* and *in forma pauperis* on May 4, 1992, under 42 U.S.C. § 1983 seeking declaratory, injunctive, and monetary relief. The only defendant named in plaintiff's complaint is TDOC Assistant Commissioner Charles Bass. Plaintiff's complaint is based on events which occurred during February and March of 1992, while he was confined at the Lake County Regional Correctional Facility ("LCRCF").

Plaintiff alleges that on February 5, 1992, he was issued a disciplinary report for the charge of possession of unauthorized property, a tape recorder. Plaintiff asserts that his family gave him the tape recorder several years earlier while he was recovering from surgery at another TDOC facility. He asserts that the tape recorder passed through TDOC processing and he has had possession of it since that time. Plaintiff asserts that the only reason the tape recorder could be unauthorized is because of TDOC personnel's failure to properly process the tape recorder by placing a TDOC authorization number on it and recording it in plaintiff's property records. He asserts that on February 13, 1992, he was convicted of the disciplinary charge by a LCRCF Disciplinary Board, and that the conviction was ultimately upheld upon plaintiff's appeal to the LCRCF Warden and to defendant Bass. Plaintiff asserts that his conviction was rendered in violation of his Fifth and Fourteenth Amendment rights to due process. Specifically, plaintiff alleges that the Disciplinary Board failed to set forth a sufficient written hearing summary as required by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *King v. Wells,* 760 F.2d 89 (6th Cir.1985). Further, plaintiff alleges that the Board relied solely upon the disciplinary write-up submitted by the charging officer.

Plaintiff's complaint was not brought against the Disciplinary Board or Warden, however, but solely against Assistant Commissioner Bass. The basis for plaintiff's complaint against Bass is that Bass is the TDOC official responsible for the final review of prison disciplinary decisions and, thus, Bass has ultimate responsibility for ensuring that the actions of lower TDOC officials do not violate a prisoner's constitutional rights. Plaintiff asserts that Bass should have recognized the violations committed by the Disciplinary Board and overturned the Board's decision. Plaintiff further asserts that Bass, as well as the TDOC officials involved in disciplinary proceedings, has failed to comply with two legal memorandums issued in 1987[1] and 1988[2] concerning the relationship between TDOC disciplinary hearings and the constitutional rights of prisoners. Plaintiff argues that until and unless Bass complies with the memorandums, and with the Constitution, the lower TDOC officials will not do likewise and the whole prison disciplinary system will remain constitutionally suspect.

By an Order entered September 3, 1992, process was ordered to issue to defendant Bass on plaintiff's claims. Bass answered the complaint on October 30, 1992, and a scheduling order was entered in this action on November 13, 1992.

On December 14, 1992, plaintiff filed a motion (Docket Entry No. 18) to join Joel Foster, the chairman of the LCRCF Disci-

---

1. The 1987 memorandum, dated May 27, 1987, was from an assistant attorney general for the State of Tennessee to a TDOC staff attorney. The legal memorandum set forth the assistant attorney general's concerns about the manner in which TDOC disciplinary hearing summaries were completed in relationship to the constitutional due process requirements set out in *Wolff v. McDonnell* and *King v. Wells.* The memorandum specifically touched upon the issues of whether the hearing summaries contained a sufficient "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," and whether incorporating other documents into the hearing summaries by reference was constitutionally permissible.

2. The 1988 memorandum, dated July 27, 1988, was from the TDOC Commissioner's counsel to the TDOC Assistant Director of Special Programs. The memorandum provided a legal opinion as to whether a TDOC practice of citing to a written disciplinary charge as the basis for a disciplinary guilt finding was in accordance with TDOC policy. Like the 1987 memorandum, the 1988 memorandum also addressed the constitutional issues raised by this practice.

plinary Board which convicted plaintiff, and Robert Conley, the LCRCF Warden who affirmed the Board's decision, as defendants to this action based on their alleged unconstitutional acts. As no opposition to the motion was filed[3], and as the claims against Foster and Conley were related to the present action, the motion was granted by an Order entered February 23, 1993 (Docket Entry No. 30). Bass sought review of this Order in a motion for review filed March 3, 1993 (Docket Entry No. 35, 36), and plaintiff responded in a motion filed March 22, 1993 (Docket Entry No. 43). It is at this point that the matter was remanded to the Magistrate Judge for reconsideration of the Order joining Foster and Conley.[4]

Also pending before the Court is Bass' motion to dismiss and/or for summary judgment filed February 26, 1993 (Docket Entry Nos. 31–33) to which plaintiff responded in a pleading filed March 8, 1993 (Docket Entry No. 37). On March 25, 1993, Bass filed a motion to supplement his summary judgment motion (Docket Entry Nos. 45, 46) to which plaintiff responded in a motion to traverse filed March 31, 1993 (Docket Entry No. 51).

## II. Reconsideration of the Joinder Order

■ The pertinent rules of civil procedure involved in this matter are Fed.R.Civ.P. 20(a)[5], which provides for permissive joinder of parties, and Fed.R.Civ.P. 21[6], which allows the Court to add or drop parties on such terms as are just.

Upon the motion of plaintiff, Foster and Conley were joined as defendants to this action because the underlying events behind plaintiff's complaint are common to all three defendants. Namely, the actions which occurred at his disciplinary hearing of February 13, 1992, and during plaintiff's subsequent administrative appeals of the Disciplinary Board's decision. The claim against each defendant is ultimately based on plaintiff's allegations that his due process rights were violated during the course of these events and, thus, the claims against all three defendants arise out of these events. This is especially true since plaintiff's claims against two of the defendants, Bass and Conley, are based on their refusal to reverse a disciplinary decision which plaintiff alleges was rendered in violation of his constitutional rights. It is reasonable to assume that questions of law or fact common to all three defendants will arise in the action. With a view towards promoting administrative convenience and preventing multiple lawsuits, joinder of Foster and Conley was granted. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th Cir.1977); *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974).

Upon further review in light of defendant Bass' motion for reconsideration, it appears that not all facts were before the Court when joinder was allowed. Bass has brought to the Court's attention, and plaintiff admits, that plaintiff currently has a 42 U.S.C. § 1983 action pending in the Western District of Tennessee, *Asad Mujihadeen v. Conley, et al.,* No. 92–1115; filed June 19, 1992, in which Foster and Conley are named as defendants.[7] It further appears that the lawsuit in the Western District involves alleged unconstitutional disciplinary and reclassification proceedings occurring between

---

3. Although plaintiff's motion contained a certificate of service on defendant's counsel, defendant's counsel stated in his motion for review that he had not received plaintiff's motion and did not know about the joinder issue until the Court's Order of February 23, 1993.

4. I note that Foster and Conley have also filed a motion to reconsider the Order joining them as defendants (filed March 21, 1993; Docket Entry Nos. 48, 49), as well as a joint answer to the complaint (filed March 24, 1993; Docket Entry No. 47).

5. Rule 20 provides in relevant part:
   All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

6. Rule 21 provides in relevant part:
   Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any state of the action and on such terms as are just.

7. A copy of the complaint in the Western District action is submitted by Bass with his motion to reconsider.

the dates of February 5, 1992, and February 18, 1992. Bass argues that the claims against Foster and Conley should be resolved in the Western District where an action against them by plaintiff is presently pending. Bass asserts joinder is inappropriate considering the fact that the claims upon which joinder is based are closely related in time and fact to the claims pending in the Western District action. Further, Bass asserts that the Western District is the proper jurisdiction for plaintiff's claims, as both Foster and Conley reside in the Western District and that is where the claims against them arose.

Plaintiff asserts these facts are inconsequential because the action brought in the Western District does not involve the disciplinary charge involved in the present action but, instead, involves two other disciplinary charges he received on or about February 5th and 8th. Plaintiff also asserts that the main focus of the action pending in the Western District is an alleged unconstitutional reclassification hearing he received.

Although the copy of plaintiff's complaint filed in the Western District case does not mention the disciplinary charge involved in the present action, I find plaintiff's arguments unpersuasive. It is apparent that plaintiff received at least three separate disciplinary charges while at LCRCF within the span of a few days during early February 1992; February 5th through February 8th. The disciplinary charge which is involved in the present action was heard by a Disciplinary Board on February 13, 1992. While it is not clear from the record exactly when the other two charges were heard by the Disciplinary Board, they were heard prior to February 18th when plaintiff was reclassified, and it is quite likely that they were also heard sometime around the 13th, if not on that day. Based on these facts, I see no justifiable reason for requiring Foster and Conley to defend two separate lawsuits which arise out of events occurring at approximately the same time, which occurred at the same TDOC facility, which involve at least three of the same parties, and which involve similar questions of law and fact. This is especially so when one of the lawsuits is pending in a District where Foster and Conley do not reside. The claims plaintiff has against Foster and Conley arising from the disciplinary proceedings of early February 1992, should be resolved in the action pending in the Western District where they are already defendants to one of plaintiff's actions. Allowing their continued joinder in the present action would defeat the goals of preventing multiple litigation and promoting administrative convenience, which were the factors supporting the original order of joinder.

The reasons behind plaintiff's decision to separate a closely linked series of events into two lawsuits brought in two different districts are unknown. Whatever the reasons may be, permissive joinder is not a vehicle for imposing unnecessary burdens on litigants or for allowing fractured litigation and multiple lawsuits arising from the same series of events. From a fair reading of the original pleading filed in this action, it is clear that plaintiff made a thought-out and intentional decision to name only Bass as a defendant to this action. As the decision to allow permissive joinder is a discretionary one, *McCormick v. Mays*, 124 F.R.D. 164, 167 (S.D.Ohio 1988), I find that the only just result based on the facts now before the Court is that Bass should remain the only defendant in this action. Accordingly, the Order joining Foster and Conley as defendants should be vacated. Pursuant to Fed. R.Civ.P. 21, they should be dropped from this action as misjoined parties.

### III. Summary Judgment

As noted above, also pending before the Court is Bass' motion to dismiss and/or for summary judgment, plaintiff's response, Bass's motion to supplement his motion, and plaintiff's motion to traverse the supplement. Although the latter two filings were submitted as motions, they are actually additional arguments regarding the appropriateness of summary judgment and I will treat these filings as supplemental briefs of the parties and not as motions.

As matters outside the pleadings have been introduced by both parties with respect to the motion to dismiss and/or for summary judgment and these matters have not been excluded by the Court, I shall treat defendant Bass' motion as a motion for summary

judgment in accordance with Fed.R.Civ.P. 12(b). *See Rogers v. Stratton Industries Inc.*, 798 F.2d 913, 915 (6th Cir.1986).

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *SEC v. Blavin*, 760 F.2d 706 (6th Cir.1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.*, at 248–49, 106 S.Ct. at 2510–11. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities*

*Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

It is unnecessary to resolve the disputes in this action at trial, and thus summary judgment in favor of the defendant is appropriate because there are no facts supporting plaintiff's allegation that he was denied due process of law.

In his complaint, plaintiff alleges that defendant Bass violated his rights by failing to overturn what plaintiff asserts was a constitutionally suspect disciplinary conviction and allowing the due process violations of the disciplinary hearing to stand. Plaintiff asserts that Bass' failure is particularly actionable because the violations asserted by plaintiff, the Disciplinary Board's failure to make an adequate written summary and its reliance on the reporting official's write-up, had been noted as constitutional problems in the two legal memorandums which were circulated among TDOC officials and which put Bass on specific notice that some of the actions taken by disciplinary boards raised constitutional problems. Under plaintiff's argument, any liability against Bass can only be premised on a preliminary determination that the Disciplinary Board's actions were constitutionally inadequate. This is so whether or not Foster and Conley are joined in this action, as their joinder would only provide additional defendants against whom liability could be asserted based on the underlying claim alleged by plaintiff: that his constitutional rights were violated by the Disciplinary Board.

Plaintiff's claims are entirely premised on the due process rights for prisoners which are set out in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and are further explained by the Sixth Circuit by *King v. Wells*, 760 F.2d 89 (6th Cir.1985). The Supreme Court in *Wolff* outlined the basic procedural protections required by the Due Process Clause of the Fourteenth Amendment for prison disciplinary proceedings and stated:

We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no

less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary actions. [citation omitted].

\*　　\*　　\*　　\*　　\*　　\*

We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

*Id.*, at 564–566, 94 S.Ct. at 2979.

In *King*, the Sixth Circuit addressed a challenge to a prison disciplinary proceeding and explained the parameters of *Wolff*'s requirement that a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action must be prepared. In rejecting the hearing summary as inadequate[8], the Court held that *Wolff* requires that a "prisoner receive a written statement by the factfinders" and that "a prisoner does not receive a statement of the evidence relied on if he received only a reference to an investigative report that contains statements of ten different witnesses." *King*, 760 F.2d at 93–94 (internal quotations removed). The Court went on to hold that "each item of evidence relied upon by the hearing officer should be included in the report unless safety concerns dictate otherwise." *Id.*, at 93.

■ The due process rights set out in *Wolff* and *King* are not substantive constitutional rights but are procedural protections due prisoners when they are deprived of a state created liberty interest. *Wolff*, 418 U.S. at 951–52, 94 S.Ct. at 3218–19; *See also Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 873–74, 74 L.Ed.2d 675 (1983). In both *Wolff* and *King*, the plaintiff inmates lost good time credits which had been determined to be a state created liberty interest for prison inmates. Similarly, the *Wolff* proce-

dural due process protections apply when a TDOC inmate loses his liberty interest in confinement within the general population and is placed in punitive segregation as the result of a disciplinary conviction. *Franklin v. Aycock*, 795 F.2d 1253, 1259–60 (6th Cir. 1986).

■ The concept of procedural due process is linked to the liberty interest involved, however, and the type of procedural protections outlined in *Wolff* and *King* do not apply to every infringement of a prisoner's liberty interest. Generally, as the magnitude or importance of the prisoner's liberty interest declines, the amount of procedural due process protections afforded to the prisoner lessens. Procedures less than those set out in *Wolff* are constitutionally adequate for TDOC prisoners facing administrative segregation as opposed to punitive segregation, *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 873–74, 74 L.Ed.2d 675 (1983); *Childs v. Pellegrin*, 822 F.2d 1382, 1386–87 (6th Cir.1987); and for TDOC prisoners facing a change in their security classification. *Beard v. Livesay*, 798 F.2d 874, 878 (6th Cir.1986). The Supreme Court specifically recognized that lesser due process protections for some prisoner proceedings may be constitutionally permissible when it stated in *Wolff*: "[w]e do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges." *Wolff*, 418 U.S. at 571, n. 19, 94 S.Ct. at 2982, n. 19.

■ In the present action, the only punishment plaintiff received as a result of being found guilty of the disciplinary charge was a written warning. Being given a written warning does not amount to being deprived of a protected liberty interest. *See Haynie v. Bass*, 902 F.2d 33 (6th Cir.1990) (unpublished table disposition at 902 F.2d 33). Without the deprivation of a liberty interest, plaintiff was not entitled to the procedural protections outlined as minimal due process in *Wolff* and *King*, or even those lesser protections set out in *Hewitt* and *Beard.* It is

---

**8.** In *King,* the Sixth Circuit rejected as constitutionally inadequate a hearing summary which contained as its entire written statement of evidence relied on and reasons for the disciplinary

action, a reference to the disciplinary charge and investigative report which contained statements of ten individuals.

axiomatic that procedural due process only arises when a prisoner's liberty or property interest is deprived. *Meachum v. Fano*, 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–39 (1976).

Plaintiff argues that he in fact was deprived of liberty interests because his security classification was later raised and he was transferred to a higher security institution. He asserts that the change in his classification status from a minimum restrictive inmate to a medium inmate deprived him of four good time credits a month. These four credits are the difference between the amount of good time credits earnable for minimum restrictive inmates (16 a month) and medium inmates (12 a month).

█ I find plaintiff's arguments fail to show how he was deprived of a liberty interest due to the prison disciplinary conviction. Plaintiff's change in security classification was not a direct result of his disciplinary conviction but a subsequent and separate event. While this change may have implicated plaintiff's liberty interest in his security classification, *Beard v. Livesay*, the constitutionality of plaintiff's reclassification proceedings are not a part of this action. I do not find persuasive plaintiff's argument that procedural due process attaches to a prison event which does not by itself implicate due process even though the event may later become a factor in a separate event to which due process protections apply. Further, despite plaintiff's claims, he did not lose accumulated good time credits as a result of the disciplinary conviction. What he lost was the *opportunity* to gain four additional good time credits. Once again, however, this loss, if it can be called an actual loss, was not a result of his disciplinary conviction.

█ Even if plaintiff's tenuous linkage of separate events can be seen as depriving him of a protected liberty interest, I note that on the disciplinary hearing summary plaintiff waived his right to have the reporting official present at the disciplinary hearing. Plaintiff's waiver allowed the Disciplinary Board to rely on the reporting officer's write-up in lieu of his direct testimony. As such, plaintiff has waived any claim that the evidence against him was based solely on the allegations contained in the disciplinary write-up or that the hearing summary makes reference

to the disciplinary write-up as the reason for the decision.

While plaintiff's allegations were enough to deem the claims non-frivolous under 28 U.S.C. § 1915(d), plaintiff is not entitled to a trial solely on the basis of his allegations. *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). He must present evidence sufficient to show that a genuine issue of material fact exists and that he could succeed on the merits of his claims based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). I find that the lack of any supporting evidence for the merits of plaintiff's claims makes them appropriate for decision by summary judgement so as to finally determine this matter. *See Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2554–55.

## RECOMMENDATION

Based on the foregoing, I now respectfully RECOMMEND:

1) that the Order granting plaintiff's motion to join Joel Foster and Robert Conley as defendants be VACATED, that the motion be DENIED, and that Foster and Conley be DROPPED as defendants to this action; and

2) that defendant Bass' motion for summary judgment be GRANTED and this matter DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this report, or the proposed findings or recommendation to which objection is made. Failure to file objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).